THE PEOPLE, for use, etc.

*v.*

JAMES L. LEHR.

*Opinion filed April 16, 1902.*

1. MEDICINE AND SURGERY—*question what is "practicing medicine" is not one for expert opinion.* On the trial of a vendor of an appliance to relieve rheumatism, for violating the act to regulate the practice of medicine, it is proper for the court to refuse to allow a physician called as an expert witness to state whether a person prescribing a medical device, claiming that it will cure rheumatism, "would be regarded as practicing medicine, as you understand the term."

2. SAME—*party recommending and selling device for relieving pain is not practicing medicine.* A person who recommends and offers for sale an instrument called an "oxygenor," to be attached to the wrist or ankle for relieving rheumatism, is not practicing medicine within the meaning of the act of 1899, regulating the practice of medicine.

3. SAME—*what must be shown to sustain conviction under section 8 of act of 1899.* To sustain a conviction for violating section 8 of the act of 1899, to regulate the practice of medicine, (Laws of 1899, p. 275,) it must be shown that the person selling the drug or appliance which he has publicly recommended to relieve pain was an itinerant vendor thereof.

*People* v. *Lehr,* 93 Ill. App. 505, affirmed.

WRIT of ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

WHITMORE, BARNES & BOULWARE, for plaintiff in error.

L. A. GILMORE, (FRANK P. BLAIR, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the Appellate Court for the Second District, to reverse a judgment of that court affirming a judgment of the circuit court of Peoria county acquitting defendant in error of a violation of the act entitled "An act to regulate the practice of medicine in the State of Illinois," etc. (Hurd's Stat. 1899, p. 1143.) The suit seems to have been begun before a justice of the peace by the People, for use of the State Board of Health, without any written complaint or other statement from which we can determine the section of that act which the defendant was charged with violating, but it seems to be insisted in the argument that what he did was contrary to both sections 7 and 8. The judgment of the justice of the peace was for the defendant. The People prosecuted an appeal to the circuit court, where, upon a trial *de novo* before a jury, he was again acquitted, and that judgment has been affirmed by the Appellate Court.

Many assignments of error on the record from the Appellate Court are here insisted upon, but they are, without exception, assignments questioning the correctness of the views of the Appellate Court as expressed in its opinion, and, of course, raise no question here upon the record. We can consider here only such assignments of error upon the rulings of the trial court as raise questions of law, the verdict of the jury and judgment of affirmance of the Appellate Court having conclusively settled all controverted questions of fact. But two such errors are here assigned: First, that the circuit court erred in

excluding competent evidence; and second, in refusing to give certain instructions asked on behalf of the People.

We gather from the testimony that the offense with which the defendant was charged was that of selling, offering to sell and advertising for sale a device called an "oxygenor or perfected oxygenor king." It was designed to be attached to the wrist or ankle of a person suffering pain, whereby, as was claimed by the defendant, oxygen or oxygen gas was generated and introduced into the body. The defendant did not profess to treat patients with this device farther than to recommend its use, and perhaps, in some instances, instruct persons how to use it. He had an office in the city of Peoria, from which he advertised and attempted to sell the oxygenor. The advertisements were, as is usual in such cases, extravagant, but the evidence does not show, or even tend to show, that he was an itinerant vendor of it.

The only criticism made upon the ruling of the circuit court in the exclusion of testimony is, that it refused to allow a physician, Dr. Edward Hasson, to answer the question, "State whether or not, in your opinion, a person prescribing a medical device, claiming that it will cure rheumatism, etc., would be regarded as practicing medicine, as you understand the term?" Manifestly, the question was improper. The statute defines the practicing of medicine, and it was for the jury, and not for a witness, even though he might be called an expert, to say whether certain conduct amounted to the practice of medicine. In other words, this question seeks to have the witness decide the very ultimate question which the jury had been sworn to try. The court properly sustained the objection to it.

Three instructions were asked on behalf of the People, all of which were refused. The first is to the effect that the act under which the prosecution was had is constitutional. No such issue was before the jury. The defendant did not deny the constitutionality of the law. The

second stated that the only defense was the introduction of the instrument or device styled the "Oxygenor King," and that if the jury found, from the evidence, that the defendant prescribed the same to persons suffering from physical ailments, and recommended it as a means of cure or relief for such ailments, and that he did so without first obtaining a license therefor from the State Board of Health, then and in that case they should find the defendant guilty and assess his fine as provided by statute. This instruction, in view of the facts of the case, does not correctly state the law. The defendant did not "treat, or profess to treat, operate on or prescribe for any physical ailment, or any physical injury to or deformity of another." He simply offered and recommended the oxygenor for sale. He was practicing medicine, within the meaning of the statute, no more than is the druggist or pharmacist who sells and recommends surgical instruments, atomizers and innumerable other appliances used by the afflicted. If this instruction should be held to announce the correct rule of law, then any neighbor or friend who might prescribe or recommend the use of a particular instrument or device would be guilty of a violation of the statute, which is certainly not in accord with the spirit of the act or the intention of the legislature. The third instruction seems to have been intended to define the practice of medicine, although it says that "medicine is the art of understanding diseases and curing and relieving them when possible," etc., and then attempts to define it. The instruction as printed in the abstract is meaningless, and in no view could it have any proper application to the case.

The only possible ground upon which the defendant could have been properly convicted would have been that his conduct was a violation of section 8 of the statute, which provides "that any itinerant vendor of any drug, nostrum, ointment or appliance of any kind intended for the treatment of diseases or injury, who shall,

by writing or printing, or any method, profess to the public to cure or treat disease or deformity by any drug, nostrum or application, shall pay a license,". etc. Admitting that the oxygenor is an *appliance,* within the meaning of this statute, the evidence did not show that the defendant was an itinerant vendor of the same. It is unnecessary to say that this, like all other penal statutes, must be strictly construed. The statute in question is a wise and humane one, and, within its reasonable construction, to be rigidly enforced; but any attempt to make it cover cases like this would be an abuse rather than an enforcement of it.

The judgment of the Appellate Court is right, and it will be affirmed.                    *Judgment affirmed.*